UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY WAYNE MCNEELY,

        Plaintiff,

v.

RONALD COURTLEY, SGT.
THOMPSON, TROOPER HODGSON,
MICHIGAN STATE POLICE DEPT,
MICHIGAN DEPT OF CORRECTIONS,
KENNETH ROMANOWSKI, RAYMOND V.
MCCLARITY, EARL FISHER, AND PATRICK
WARREN, AND UNKNOWN NAMED
CORRECTIONS OFFICER;
        Defendant.
_____/

Case No. 13-CV-13790
Honorable Denise Page Hood

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [#3]

Before the Court is Defendants' Motion to Dismiss. **[Docket No. 3, filed November 8, 2013]** Plaintiff did not file a response but did appear for oral argument on the motion on January 15, 2014. At oral argument, the Court notified Plaintiff that though it would allow him to verbally make his argument, he needed to file a written response to Defendants' motion in order for his argument to become a part of the official record in this case. On January 21, 2014, Defendants filed a document captioned "Defendants' Reply to Plaintiff's Oral Response in Opposition of Motion to Dismiss" in which Defendants made arguments in response to those Plaintiff made

at the Court's January 15, hearing. **[Docket No. 6]** On January 22, 2014, Plaintiff filed an Affidavit reiterating his arguments and claims for relief. **[Docket No. 7]**

Reverend Jerry Wayne McNeely ("Plaintiff"), is a private citizen and resident near the state of Alabama. **[Compl. ¶7]** Plaintiff filed a twelve-count[1] civil rights complaint against Defendants Ronald Courtley, Sgt. Thompson, Trooper Hodgson, the Michigan State Police Department, Dispatcher, the Michigan Department of Corrections, Kenneth Ramanowski, Raymond V. McClarity, Earl Fisher, Patrick Warren, and an Unknown Named Corrections Officer, alleging violations pursuant to 42 U.S.C. § 1983, as well as various state law claims. **[Docket No. 1, filed September 5, 2013]** In his complaint, Plaintiff alleges that Defendants "made unlawful stops of Plaintiff that resulted in unreasonable search and seizure and . . . excessive, unnecessary use of force against Plaintiff." Plaintiff contends that the Michigan Department of Corrections and Michigan State Police Department are liable "for their failure to properly train and supervise Defendants in the proper use of force and techniques used to secure the search of a vehicle, proper dispatch policy, and its establishment of polices, procedures, practices, and customs regarding arrest that resulted in the excessive and unnecessary use of force."

Based on his allegations, Plaintiff seeks monetary damages "for his physical

---

[1] The Court notes that though the Complaint lists Counts up to "Count XIII," the Complaint is missing a "Count V."

2

and mental pain and suffering, both past and future; permanent injury and disability; loss of property, U.S. Currency and identity; [and] medical and psychological expenses, both past and future." Plaintiff also requests an award of reasonable expenses incurred, including attorney and expert fees, punitive damages, compensatory damages, and "any other further and general relief" to which it appears to the Court he is entitled. Having reviewed the complaint, the Court dismisses it for failure to state a claim upon which relief may be granted under 42 U.S.C. § 1983. The Complaint could also be dismissed on the basis of immunity as to all Defendants except Officer Earl Fisher and Trooper Ronald Courtley.

## I.    BACKGROUND

On August 14, 2012, Plaintiff visited the Woodland Correctional Facility in Livingston County, Michigan. Plaintiff provided Kenneth Romanowski, the warden of the facility, with a written document requesting records regarding an inmate, Kosygin McNeely (no relation to the Plaintiff) who was allegedly deprived of food some time after he had a religious call with Plaintiff at the facility. Plaintiff contends that though the inmate had not identified any individuals on his visiting list for approval at the time of his visit with the inmate, his position as a qualified clergy made him exempt from the restrictions of the visiting policy.

On August 19, 2010, at around 11:30 a.m., Plaintiff arrived at the correctional facility and attempted to make a religious call with inmate McNeely. Plaintiff alleges that he secured both his cell phone and $100,000 in his vehicle, displayed identification to Ray McClarity, a correctional officer employed by the State of Michigan, and entered the lobby of the facility carrying identification, his wallet, a bible, $400, and various other things. Plaintiff states that he was invited to register in the visitor book and after Officer McClarity refused "to provide [Plaintiff] written disclosure regarding use, access, handling, and sharing registry information," Plaintiff asked to use the phone to contact the Warden and State Police. Plaintiff notes that Defendants "did not know and have the identity of anyone restricted from visiting the prisoner," including Plaintiff, "at the time Defendants stopped, delayed and detained" him.

Plaintiff further alleges that after waiting in the lobby, not allowed to visit inmate McNeely, "[s]everal people used various schemes, artifices and devices to stop, attempt to dissuade, stall, discourage, and detain [him] from making [the] religious call[.]" At some point, an unidentified correctional officer communicated with Trooper Ronald Courtley, a state trooper employed by the State of Michigan, and he was dispatched to the facility where he came in contact with Plaintiff. Warden Romanowski met with Plaintiff but "did not tell him to leave." Plaintiff contends that

4

some time after Trooper Courtley's arrival, Captain Patrick Warren, Correctional Officer Earl Fisher, and an unidentified correctional officer ("UCO"), all employees of the State of Michigan, "positioned themselves in a clandestine, stealth manner appearing careful to avoid facility camera view preventing [Plaintiff] from leaving." Plaintiff states that Defendants Warren, Fisher, Courtley, and the UCO surrounded him and Courtley asked him to identify himself. Plaintiff presented his clergy identification and Courtley told Plaintiff that he "was not under arrest" though Courtley "refused to answer [Plaintiff's] question regarding if he was a suspect to a crime and refused to leave [Plaintiff] alone until after he had made [the] religious call with the prisoner." Plaintiff did "not think or feel that he was at liberty to leave."

After this conversation, Plaintiff was arrested. Plaintiff argues that Defendant Courtley, having not received his consent and over his "plea to protect and preserve his privacy," put his hands in Plaintiff's pocket "took and gave some property, papers and effects he had taken from [Plaintiff's] pocket and gave some to another to have, copy, duplicate, use and retain[.]" Plaintiff contends that Defendants Warren, McClarity, Ramanowski, the UCO, and Fisher, failed to receive "adequate training regarding visits, search, use of force and arrest having examined and interrogated [Plaintiff] and finding no restriction and condition applied to restrict and delay him to make [the] religious call with [the] prisoner," arrested him and "cause[d] his vehicle

5

[to be] carried away."

Plaintiff states that Defendants "lacked sufficient facts" to infer that he was "involved in criminal activity at the time" and that he, Plaintiff, "was unarmed and did not possess contraband." Plaintiff alleges that he was "taken and lodged for about 14 days," though Defendants "did not find anything to infer criminal activity." Plaintiff asserts that his property, including but not limited to more than $100,000 and his social security card, were destroyed when his vehicle was carried away and impounded. After Plaintiff was jailed, several jurisdictional challenges were made on the record and filed with the court and the charges against Plaintiff were dismissed with prejudice.

Plaintiff filed a Complaint on September 5, 2013. In his Complaint, Plaintiff alleges twelve-counts for relief: Violation of Civil Rights Pursuant to Civil Rights Act 1871, 42 U.S.C. §§ 1983 and 1985 (General Allegations)**(Count I)**; Violation of Civil Rights Pursuant to Civil Rights Act 1871, 42 U.S.C. §§ 1983 and 1985 (Failure to Implement Appropriate Policies, Customs and Practices) **(Count II)**; Violation of Civil Rights Pursuant to Civil Rights Act 1871, 42 U.S.C. §§ 1983 and 1985 (Failure to Implement Appropriate Policies, Customs and Practices)**(Count III)** ; Violation of Civil Rights Pursuant to Civil Rights Act 1871, 42 U.S.C. §§ 1983 and 1985 (Use of Excessive Force)**(Count IV)**; Violation of Civil Rights Pursuant to Civil Rights Act

1871, 42 U.S.C. §§ 1983 and 1985 (False Arrest)**(Count VI)**[2]; Violation of Civil Rights Pursuant to Civil Rights Act 1871, 42 U.S.C. §§ 1983 and 1985 (Deprivation of Property Without Due Process of Law)**(Count VII)**; Michigan Governmental Tort Liability Act, Pursuant to M.C.L. § 691.1401, *et seq.*/ Michigan Common Law (False Imprisonment)**(Count VIII)**; Michigan Governmental Tort Liability Act, Pursuant to M.C.L. § 691.1401, *et seq.*/ Michigan Common Law (Negligence)**(Count IX)**; Michigan Governmental Tort Liability Act, Pursuant to M.C.L. § 691.1401, *et seq.*/ Michigan Common Law (Negligent Supervision)**(Count X)**; Michigan Governmental Tort Liability Act, Pursuant to M.C.L. § 691.1401, *et seq.*/ Michigan Common Law (Conspiracy)**(Count XI)**; Michigan Common Law (Conversion)**(Count XII)**; and Michigan Common Law (Assault)**(Count XIII)**.

## II.   STANDARD OF REVIEW

Rule 12(b)(6) of the Rules of Civil Procedure provides for a motion to dismiss based on failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to

---

[2] There is no Count "V" in Plaintiff's Complaint.

raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Id.* at 563.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557. Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content" and the reasonable inferences from that content must be "plausibly

suggestive" of a claim entitling a plaintiff to relief. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

### III. ANALYSIS

Defendants filed a Motion to Dismiss on November 8, 2013. **[Docket No. 3]** In this motion, Defendants argue that Plaintiff's Complaint should be dismissed because: (1) Plaintiffs claims against the Department of Corrections and the Michigan State Police are barred by the Eleventh Amendment and (2) Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 are time-barred because they are subject to the State's statute of limitations, which has since elapsed. The Court will first address the statute of limitations issue as it is in large part dispositive of the remaining issue.

**A. Statute of Limitations**

There is no specific limitations period for claims brought under § 1983. Rather, federal courts are instructed to borrow a limitations period from analogous state statutes. *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 180 (6th Cir. 1990); *see*

*also Hardin v. Straub*, 490 U.S. 536, 539 (1989) ("Limitations periods in § 1983 suits are to be determined by reference to the appropriate 'state statute of limitations and the coordinate tolling rules[.]'"). In looking for an applicable statute of limitations, § 1983 claims are to be characterized as personal injury actions. *See generally Owens v. Okure*, 488 U.S. 235 (1989). The Sixth Circuit has held that when state law provides multiple statutes of limitations for personal injury actions, courts faced with the proper limitation period for a § 1983 claim should borrow the general or residual statute for personal injury actions. *See Collard*, 896 F.2d at 181.

In this case, the correct limitation period is found in M.C.L. § 600.5805 (10), which provides that general personal injury actions may be brought within three years after the time of death or injury. *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (holding Section 1983 claims brought in Michigan are subject to the three-year statute of limitations for personal injury claims). The statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.*

Here, Plaintiff alleges that on August 19, 2010, he was falsely arrested and assaulted by police officers working for the State of Michigan. Plaintiff states that he

was "lodged and confined in jail until about 5:00 PM on August 31, 2010." The Court is satisfied that the date on which Plaintiff should have "had reason to know of his injury" would be the date of his arrest, at the earliest, and the date of his release, at the latest, making the clock commence on August 31, 2010.

At the hearing, Defendants notified the Court that though September 1, 2013, would have been the date that the clock would have "stopped" and the statute of limitations have run, September 1, 2013, fell on a Saturday. Pursuant to Federal Rule of Civil Procedure 6, "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Additionally, September 2, 2013, was Labor Day, giving Plaintiff until September 3, 2013, to file his Complaint with the Court. Plaintiff's argument, both at the January 15, 2014, hearing and again in his Affidavit, is that the filing of his Complaint was timely. The record shows that Plaintiff mailed his Complaint from Birmingham, Alabama on September 3, 2013. **[Docket No. 1, at 29-30]** The Complaint was filed by the clerk of court on September 5, 2013. Plaintiff contends that the date of mailing, September 3, 2013, was the last date to file and comply with the statute of limitations and that because he mailed the Complaint on that date, he was in compliance.

"A civil action is commenced by filing a complaint with the court." *Searcy v. Cnty. of Oakland*, 735 F. Supp. 2d 759, 765 (E.D. Mich. 2010) (quoting Fed. R. Civ. P. 3). Filing of papers is governed by Federal Rule of Civil Procedure 5(d) which states that "[a] paper is filed by delivering it: (A) to the clerk; or (B) to a judge who agrees to accept it for filing, and who must then note the filing date on the paper and promptly send it to the clerk." Rule 5(b)(2)© provides for service of papers by mail. However, this rule does not, as Plaintiff's argument proposes, establish a "mailbox rule" for the filing of a complaint. Instead, the "mailbox rule" has been held to apply only to prisoners reliant on the institution to mail court papers.[3] If mailed, a "filing" is accomplished "only when actually received by the clerk or when placed in the clerk's post office box." *Torras Herreria y Construcciones, S.A. v. M/V Timur Star*, 803 F.2d 215, 216 (6th Cir. 1986) (citation omitted).

---

[3] *See, e.g.*, *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (stating that the "prison mailbox rule" creates a "relaxed filing standard [where] a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court . . . . with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint") (internal citations omitted); *Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002) (stating that a prisoner's complaint "should be deemed timely filed as of the date it was submitted to prison authorities for forwarding to the court clerk pursuant to the mailbox rule").

12

Here, Plaintiff admits that he did not mail the Complaint until September 3, 2013, the last day within the statute of limitations. The clerk's office did not receive and docket the Complaint until September 5, 2013, outside of the statute of limitations. Because it is well established that "filings [that reach] the clerk's office after [the] deadline are untimely, even if mailed before the deadline," *Torras Herreria y Construcciones, S.A.*, 803 F.2d at 216, the Court concludes that the limitations period on the § 1983 claims for damages—both federal and state tort claims—arising from the events surrounding Plaintiff's arrest and detention has expired. Plaintiff can no longer seek relief on these claims.

### B. Immunity

In addition to the fact that Plaintiff's claims are time-barred, Plaintiff's Complaint may also be dismissed on the basis of immunity. The Eleventh Amendment to the United States Constitution bars suits against states and their departments or agencies in federal court. *Alabama v. Pugh*, 438 U.S. 781 (1978); *Quern v. Jordan*, 440 U.S. 332 (1979). The jurisdictional bar applies regardless of the nature of the relief sought. *See Missouri v. Fiske*, 290 U.S. 18, 27 (1933); *Dugan v. Rank*, 372 U.S. 609, 620 (1963). Absent a waiver of valid abrogation, the Eleventh Amendment bars an official capacity suit against the Defendants.

It is well known that the State of Michigan has not waived its right to sovereign immunity under the Eleventh Amendment in civil rights actions in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Further, Congress can only abrogate a State's immunity through an unequivocal expression of its intent to do so and pursuant to a valid exercise of power. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996). Though 42 U.S.C. § 1983 was adopted pursuant to § 5 of the Fourteenth Amendment, Congress did not indicate its intent to abrogate state sovereign immunity and therefore, Eleventh Amendment immunity is preserved. *Quern*, 440 U.S. at 345. Here, Defendants Michigan State Police Department and Michigan Department of Correction may not be sued in federal court unless the state has waived its sovereign immunity, and the State of Michigan has not waived immunity. The Complaint is dismissed as to these Defendants.

Further, Defendant officers and the dispatcher, though individually named, are sued in their "official" capacities. Plaintiff argues that though "Defendants were acting in the scope of their employment and under color of law, they made unlawful stops of Plaintiff that resulted in unreasonable search and seizure and in the excessive, unnecessary use of force against Plaintiff." To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2)

caused by a person acting under the color of state law. *Dominguez v. Corr. Med. Services*, 555 F.3d 543, 549 (6th Cir. 2009). Even assuming, arguendo, that this Court were to find a question of fact as to whether Defendants used excessive force, Defendants would nevertheless be entitled to qualified immunity.

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Court dispensed with the previous rule that allowed a finding of liability "if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . . .'" *Id.* at 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). *Harlow* found the second, subjective component of this analysis to be a hindrance, rather than an aid, to two of the central goals of qualified immunity—"to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow*, 457 U.S. at 818).

Here, determining whether the government officials are entitled to qualified immunity requires two inquiries: (1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation. *Dominguez*, 555 F.3d at 549. For a right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable [government official] would understand that what he is doing violates that right." *Harris v. City of Circleville*, 583 F.3d 356, 366-67 (6th Cir. 2009); *see also Saylor v. Bd. of Educ.*, 118 F.3d 507, 515 (6th Cir. 1997) ("[f]or a constitutional right to be clearly established, as this court has repeatedly noted, "the law must be clear in regard to the official's particular actions in the particular situation") (citations omitted).

Certainly, the Court is satisfied that Plaintiff had a clearly established right to be free from the excessive use of force in his arrest. However, this does not end the inquiry. This Court must also ask whether Defendants had reason to know that, under the circumstances of this particular arrest, their actions would amount to an excessive use of force. Plaintiff alleges that Defendant Courtley "struck" him while he was still in handcuffs, grabbed his arm, pulled, pushed, and poked him. Plaintiff also states that both Defendant Fisher and Courtley "grabbed and shoved him into Courtley's vehicle causing him to hit his head on the car." These particular actions, the Court

16

determines, can be viewed as using excessive force therefore removing qualified immunity protection for these two Defendants, Officer Earl Fisher and Trooper Ronald Courtley, only.

The Court is not satisfied that any of the other alleged actions were actions that Defendants would have believed amounted to excessive force. As to all remaining Defendants listed individually, but as noted by this Court, based on allegations of actions taken in their official capacity, Sgt. Thompson, Trooper Hodgson, the Dispatcher, Kenneth Ramanowski, Raymond V. McClarity, Patrick Warren, and the Unknown Named Corrections Officer, the Complaint is dismissed for failure to state a claim due to qualified immunity protection.

## IV. CONCLUSION

Even though the Court finds qualified immunity does not protect Defendants Fisher and Courtley, the entire Complaint is barred by the statute of limitations and is therefore dismissed. Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss **[Docket No. 3, filed November 8, 2013]** is **GRANTED** because the statute of limitations has run with regard to Plaintiff's claims.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss **[Docket No. 3, filed November 8, 2013]** is also **GRANTED** on the basis of qualified

immunity as to Sgt. Thompson, Trooper Hodgson, the Dispatcher, Kenneth Ramanowski, Raymond V. McClarity, Patrick Warren, the Unknown Named Corrections Officer, the Michigan State Police Department, and the Michigan Department of Correction.

**IT IS FURTHER ORDERED** that this matter is **DISMISSED**.

**IT IS SO ORDERED**.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  February 28, 2014


I hereby certify that a copy of the foregoing document was served upon counsel of record on February 28, 2014, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager